# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 14 | **DATE** | 5/23/2000 |
| **CASE TITLE** | MICHAEL CRANDALL vs. CITY OF CHICAGO, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum opinion and order: For the reasons set forth above the City of Chicago's Motion to dismiss count VII, to dismiss Hilliard from the case and to dismiss the punitive damages claim against the City of Chicago is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 4 2000 | |
| | Notified counsel by telephone. | | date docketed | 16 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 5/23/2000 | |
| | | | date mailed notice | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | CG mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL CRANDALL <br><br> Plaintiff, <br><br> CITY OF CHICAGO, J. HILLIARD, <br> In his capacity as superintendent of the <br> department of police, and these individuals: <br> OFFICER, Sergeant GILLESPIE, <br> OFFICE JOHN DOE2 <br><br> Defendants. | No. 00 C 14 <br> Judge Ronald A. Guzman <br><br> DOCKETED <br><br> MAY 2 4 2000 |

### MEMORANDUM OPINION AND ORDER

Pending is defendants Terry Hilliard ("Hilliard") and City of Chicago's ("the City") motion to dismiss Count VII of plaintiff's complaint, to dismiss Hilliard from the case and to dismiss the punitive damages claim against the City. For the reasons set forth below this motion is granted.

### BACKGROUND FACTS

The following facts are drawn from Crandall's six count complaint.[1] At approximately 5:00 p.m. on April 30, 1999, Michael Crandall, Janae Mauer, Ryan Nagle, Debbie King, Trisha

---

[1]Plaintiff's complaint consists of Count I, II, IV, V, VI and VII. Count III is missing.

1



Kelipeleole, Nick and Colleen Bolte and Kal Koestner were leaving a Chicago Cubs game. As they walked down the street a police car stopped in the middle of the road. The officer exited the stropped vehicle and began pursuit of Ryan Nagle. A Sergeant Gillespie grabbed Ryan Nagle and started walking him back to the squad car. Upon arrival to the car, Michael Crandall asked the Sergeant why Ryan Nagle was being arrested. The Sergeant responded with a profane remark. Michael Crandall again asked the Sergeant why Ryan Nagle was being arrested. The Sergeant then responded, "Do you want to join him smart ass?" The Sergeant then put Ryan Nagle into the squad car. Nagle's girlfriend, Janae Mauer, began yelling at the Sergeant, "This is crazy...Ryan did not do anything." The Sergeant again responded, "shut up unless you all want to join him." As Colleen Bolte continued to question the Sergeant, the Sergeant violently grabbed her and slammed her on top of the police car. Bolte's husband questioned the Sergeant as to why his wife was being handled in a violent manner when she was just inquiring as to why Ryan Nagle was being arrested. Nick Bolte was subsequently grabbed and slammed on top of the second police car by Officer John Doe 1. At this point, Michael Crandall and Janae Mauer, were violently tackled from behind by a plain-clothes, Officer John Doe 2, forcing both to hit the pavement very hard. Officer John Doe 2 then struck his knee into Michael Crandall's back, placed hand cuffs on his person, picked him up and threw him into the police car causing injury to Crandall's right biceps, left and right knee and a cut to his lip. Crandall was subsequently arrested and falsely imprisoned for three hours. On April 30, 1999 Crandall pled guilty to the change of disorderly conduct and received a sentence consisting of supervision for six months.

Count I alleges a false arrest claims against "Sergeant [sic], Officer John Doe 2" under 42 U.S.C. § 1983, Count II alleges a false imprisonment claim against "the Sergeant and John Doe

2" apparently under the Fourteenth amendment; Count IV alleges an assault claim against John Doe 2 under 42 U.S.C. § 1983; Count V alleges a battery claim against John Doe 2 under 42 U.S.C. § 1983; Count VI sets forth a claim for intentional infliction of emotional distress under Illinois law against "The Sergeant and John Doe2"; Count VII alleges a claim against the City of Chicago and the Chicago Police Department claiming that "they were aware of a pattern of behavior" by "Sgt. Gillespie, Officer John Doe 2 and other officers of the Chicago Police Department in violating the rights of individuals."

## DISCUSSION

Dismissal on the pleading is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Kunik v. Racine County, Wisconsin*, 946 F. 2d 1574, 1579 (7th Cir. 1991)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). A dismissal for failure to state a claim is improper "unless it appears beyond a doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 78 S. Ct. 99, 2L. Ed. 2, 80 (1957). At this juncture it is not a function of the court to determine whether the plaintiff will prevail, but only that plaintiff pleaded sufficient facts to proceed.

## COUNT VII

The City of Chicago moves to dismiss Count VII, the only claim directed at the City of Chicago, arguing that such claims are insufficient to state a federal claim against the City of

3

Chicago under *Monell v. Dept. of Social Services of New York*, 436 U.S. 658 98 S. Ct. 2118, 56 L. Ed. 2d 611 (1978). Although a claimant may sue a local government unit under § 1983, the local government unit cannot be held liable under § 1983 on a *respondent superior* theory for employing a tortfeasor. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2118, 2035-36, 56 L. Ed. 2d 611 (1978); *Morgan v. Board of Trustees of Community College District No. 508*, No. 98 C 1095, 1999 WL 160369, at *3 (N.D. Ill. Mar. 9, 1999). Rather, the viability of a § 1983 action against a government body rests on an allegation that the execution of the local government body's "official policy" itself results in a deprivation of a constitutionally protected right. See *Monell*, 436 U.S. at 694.

To state a § 1983 municipal liability claim, plaintiffs must allege an "affirmative link" between the policy and the constitutional violation such that the enforcement of the policy was the "moving force" behind the violation. See *Cornfield By Lewis v. School Dist. No. 230*, 991 F. 2d 1316, 1324 (7th Cir. 1993) (citing *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823, 105, S. Ct. 2427, 85 L. Ed. 2d 791 (1985). There are three recognized contexts where a municipality or other local governing body can be sued under § 1983:

> (1) for an express policy that causes a constitutional deprivation; (2) for a widespread practice that, although not authorized by written law or express municipal policy, causes a constitutional deprivation and is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) for an allegation that the constitutional injury was caused by a person with "final policymaking authority."

*Baxter by Baxter v. Vigo County School Corp.*, 26 F. 3d 728, 735 (7th Cir. 1994).

Because this is a motion to dismiss, we accept as true plaintiff's well-pleaded factual allegations and draw all reasonable inference in the light most favorable to him. See *Cornfield by Lewis v. School Dist. No. 230*, 991 F. 2d 1316, 1324 (7th Cir. 1993). Plaintiff's claim that two of

the above requirements are met to hold the City liable because the complaint alleges that Sergeant Gillespie and John Doe2 committed acts that have become so commonplace in the Chicago Police Department that the acts amount to "a widespread practice." Plaintiff further argues that Gillespie "a person with final policymaking authority" had knowledge of the pattern of constitutionally offensive acts by subordinates but failed to take remedial steps. But Crandall offers no facts in support of these claims–he does not identify what kind of policy might have influenced the supervisor's actions, what basis supports a belief that such a policy existed, or how such policy operated. We recognize that under the federal system of notice pleading plaintiffs are not required to give detailed facts in support of their claims, see *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993), but in § 1983 cases, "[b]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a [municipal] policy does exist, are insufficient to survive a motion to dismiss." *McTique v. City of Chicago,* 60 F. 3d 381, 382-83 (7th Cir. 1995)(quoting *Baxter,* by *Baxter v. Vigo County School Corp.,* 26 F. 3d 728 at 736). Not only are Crandall's allegations conclusory and boilerplate, but they are too vague to support a § 1983 municipal liability claim.

Crandall's claim that the defendants' unlawful acts "were so pervasive as to constitute a the policy and practice of the City" is similarly deficient. Aside from the inclusion of the boilerplate language, Crandall's complaint does not recount any pervasive or continuous conduct. Crandall alleges that all of the individual defendants' actions were unlawful, but all were part of one situation or episode particular to him. Specifically, Crandall alleges in paragraph 45 that "the City of Chicago and the Chicago Police Department had knowledge of and had they

diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had a knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed." By alleging that the supervisors "should have had a knowledge that the wrongs...were about to be committed" Crandall effectively pleads himself out of court. Actions that frustrate City policies and practices cannot be the basis for holding that government liable; rather, to state a § 1983 claim, "the agent's action must implement" City policy. *Auriemma v. Rice*, 957 F. 2d 397, 399, 401 (7th Cir. 1992). The acts Crandall complains of, all part of one isolated incident, do not support a *Monell* type of claim. Crandall makes no reference to any pattern or practice of unconstitutional conduct from which we could infer that Chicago's policy making officials had knowledge of unconstitutional conduct and ratified it by acquiescence, and we cannot allow a municipal liability suit to proceed on a *respondeat superior* theory. See *Monell*, 436 U.S. at 690-91. Therefore, Count VII is dismissed against the City of Chicago with prejudice.

## PUNITIVE DAMAGES

The City's second argument contends that plaintiff's demand for punitive damages must be stricken citing *City of Newport v. Facts Concerts*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981). Plaintiff raises no argument in opposition to the City's motion to strike. Hence, plaintiff's claim for punitive damages is hereby stricken from the complaint.

## HILLIARD IN HIS OFFICIAL CAPACITY

The caption of plaintiff's complaint names Superintendent Terry Hilliard in his official capacity as the Superintendent of Police. There are no claims directed against Hilliard in the body of plaintiff's complaint. Because Crandall has failed to sufficiently allege a proper 1983 claim

6

against the City, plaintiff's claim against Hilliard in his official capacity must be dismissed.

## CONCLUSION

For the reasons set forth above the City of Chicago's motion to dismiss Count VII to dismiss Hilliard from the case and to dismiss the punitive damages claim against the City of Chicago ( #8) is granted.

**SO ORDERED**  ENTERED: 5/23/00

HON. RONALD A. GUZMAN
**United States Judge**